UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

ANDREW ALI,

                              Petitioner,

        -vs-                                **No. 6:13-CV-6210(MAT)**
                                            **DECISION AND ORDER**
DAVID UNGER,

                              Respondent.

———————————————————————

## I.  Introduction

Andrew Ali ("Ali" or "Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being unconstitutionally detained in Respondent's custody. Petitioner's incarceration is the result of a judgment of conviction entered against him on December 22, 2009, following a jury trial in Erie County Court of New York State (Franczyk, J.) on charges of Assault in the First Degree (N.Y. Penal Law § 120.10(1)).

## II.  Factual Background and Procedural History

### A.  Petitioner's Trial

#### 1.  The Prosecution's Case

On April 10, 2009, fourteen-year-old Paul Manning ("Manning") was at the Sprenger Basketball Court in the City of Buffalo, where he became involved in a fight with a teenager whom he identified as Robert Royal ("Royal"). After the fight, Royal left but did not take his cell phone with him. Manning picked up the phone and left as well.

While walking home, Manning was approached by a truck containing Royal, Petitioner, and several other individuals. According to Manning, the truck's occupants told him and his companions to stop. They then got out of the truck, armed with baseball bats. Petitioner demanded to know why Manning had jumped his nephew and threatened to kill Manning and his companions. At that point, Royal's brother got out of the truck and struck Manning in the face, causing a lump on his eye. Petitioner and his companions got back in the truck and drove away.

When Manning arrived home, he was asked what happened to his eye by Ronald Brown ("Brown"), the father of his sister's baby. Manning did not reply at first, but he eventually directed Brown to Petitioner's residence at 1977 Bailey Avenue. En route to Bailey Avenue, they were joined by four of Manning's friends.

Once they arrived at Petitioner's house, Brown and Manning went up onto the porch, while the others remained on the sidewalk. Brown knocked heavily on the front door leading to Petitioner's upstairs apartment, waited, and knocked again. According to Brown, Petitioner came running down the stairs, opened the door, rushed out at him, produced a knife from behind his back, and tried to stab Brown in the face. Brown deflected the knife and tried to turn and run away, but Petitioner stabbed him in the lower left side of his back. T.291-92. Brown testified that as he was attempting to run away, Petitioner was grabbing at his left shoulder. Brown ran

-2-

towards the right side of the porch to try to escape by jumping over the railing. T.293. Petitioner grabbed him again from behind and kept stabbing at him. T.294.

Brown finally was able to get away by jumping over the railing. He hit a garbage can face-first as he landed, got up, and ran down the street to his sister's family's house. No one answered the door, so he staggered past three or four more houses before finally collapsing. Several passers-by summoned emergency assistance.

Brown first regained consciousness in the hospital after his surgery to repair the damage from the five stab wounds he sustained (one on his hand, one on his chest, one on his back, and two on his upper left arm). T.305-06. The ulnar nerve in his left arm had been severed completely, and the left median nerve was almost totally transected. At the time of trial, Brown still had pain, cramping, and weakness in his hand and arm.

When Officer Mark Constantino ("Officer Constantino") of the Buffalo Police Department ("BPD") responded to the scene, he observed Petitioner pacing back and forth on the porch with a knife in his hand repeating, "[T]hese mother fuckers, these mother fuckers . . . I stabbed him, I stabbed him." T.406. Officer Constantino ordered Petitioner to drop the knife and come down from the porch. Petitioner complied, and they placed him in custody. Petitioner told Constantino that he had stabbed Brown, but that it

was in self-defense because "they" kept trying to jump his stepson, threw bricks at his house, and tried to kick in his door. T.415.

Detective Mark Vaughn ("Vaughn") interviewed Petitioner and took a statement from him at the BPD homicide office. Petitioner told Vaughn that he had stabbed Brown on his front porch and explained that it was the result of his stepson being "jumped" by some boys earlier in the day. According to Petitioner, his stepson "got the best of one of th[o]se boys" and someone in the group stated, "[T]his shit ain't over." Petitioner related that a few minutes after he and his stepson arrived home, the boys came to his house and began throwing rocks at it. Petitioner went downstairs, grabbed a knife, and got into a fistfight with one of the boys. According to Petitioner, the boys came up onto the porch and jumped him, so he started swinging the knife at him. When Petitioner was able to free himself, he went upstairs and told his wife to call 911. Petitioner also stated that one of the boys had a black gun in his right hand.

When Detective James Lema ("Lema") interviewed Petitioner's wife, Zeina Ali ("Mrs. Ali"), he observed nothing out of the ordinary with her demeanor. Lema also did not see any broken windows in the apartment.

Detectives Reginald Minor ("Minor") and Phil Torre ("Torre") of the BPD responded to the scene, where they found an eight-inch butcher's knife in Petitioner's front yard. Minor testified that

there was blood on the knife, the porch railing, a nearby car, and a garbage can. There were no signs of forced entry.  Torre testified there was a small amount of blood on the porch and a blood trail that led over the railing to a vehicle parked in the driveway and continued to the area in the street where Brown was treated by paramedics. T.460-61. Although Torre observed a couple of stones and sticks on the front lawn, he did not see any sticks, stones, or bricks in the street. No other weapons besides the butcher's knife were recovered at the scene.

### 2.   The Defense Case

Casey Shemski ("Shemski") testified that he saw seven to ten teenagers standing outside Petitioner's house, saw "something" in their hands, and heard the sound of glass crashing. According to Shemski, he observed a man "breaking into" the door going to the upper apartment. T.514. He heard a loud commotion "for a few seconds" coming from the front hallway and then he saw "a guy running out of [the] house and . . . [Petitioner] chasing after him. . . ." T.514. Petitioner chased the man down the street about 50 to 100 feet and then "casually walked upstairs." T.515. Shemski did not hear Petitioner say, "I stabbed that mother fucker," but he did hear Mrs. Ali screaming.

Johnny Kidd ("Kidd"), Petitioner's downstairs neighbor, heard a loud commotion on Petitioner's stairs. Kid saw a group of ten to fifteen young black males standing outside in front of Petitioner's

house. T.524-26. He could not see anything in their hands. T.525. Kidd did not see the stabbing. Kidd stated that after he heard the noise in the hallway, about "five or six seconds later" he "looked out because [Petitioner] was chasing somebody and they were gone." T.527.

Mrs. Ali testified that she and Petitioner were in their kitchen preparing fish and cabbage for dinner when they heard a loud commotion downstairs. Looking outside, they saw a group of young men. Petitioner asked them to go away but they refused. T.530. When she went to the top of the stairs, she saw a young man standing at the bottom of the stairs with a brick in his hand. Petitioner started to go downstairs and yelled for Mrs. Ali to call 911. He returned about 30 to 45 seconds later and was "really emotional." T.532. He asked her to call 911 again because he had stabbed one of the men. T.532.

### 3.   The Justification Charge and Jury Deliberations

At trial counsel's request, the trial court charged the jury pursuant to P.L. § 35.20(3), which permits a person in possession or control of a dwelling "who reasonably believes that another person is committing or attempting to commit a burglary of such dwelling . . . [to] use deadly physical force upon such other person when he or she reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of such burglary." N.Y. PENAL LAW § 35.20(3).

During deliberations, the jury sent out a note which asked for "more clarification on part of a structure (dwelling), a threat in regards to inside your home or outside your home." T.645. At the prosecutor's request, and with no objection from defense counsel, the trial court instructed the jury that the front porch was not a part of "a dwelling." T.649-50, 655.

### 4.   Verdict and Sentence

The jury returned a verdict finding Petitioner guilty as charged in the indictment of first degree assault. Prior to sentencing, defense counsel made a motion to set aside the verdict pursuant to New York Criminal Procedure Law ("C.P.L.") § 330.30, which the trial court denied. The trial court sentenced Petitioner to a determinate term of seven years in prison to be followed by five years of post-release supervision.

### B.   Post-Conviction State-Court Proceedings

Represented by new counsel, Petitioner appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. The conviction was unanimously affirmed, and leave to appeal to the New York Court of Appeals was denied. People v. Ali, 89 A.D.3d 1412 (4th Dep't 2011), lv. denied, 18 N.Y.3d 881 (2012).

### C.   The Federal Habeas Proceeding

This timely habeas petition followed in which Petitioner asserts the same grounds for relief that he raised on direct

appeal. Respondent argues that three of Petitioner's claims are procedurally defaulted due to the Appellate Division's reliance on an adequate and independent state ground to dismiss them, and that all of the claims do not warrant habeas relief. Petitioner did not file a reply brief.

For the reasons that follow, the request for a writ of habeas corpus is denied, and the petition is dismissed.

## III. The Adequate and Independent State Ground Doctrine and Procedural Default

### A.    General Legal Principles

"Federal courts generally will not consider a federal issue in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" <u>Garvey v. Duncan</u>, 485 F.3d 709, 714 (2d Cir. 2007) (quoting <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002) (alteration and emphases omitted in <u>Garvey</u>)). Only a "firmly established and regularly followed state practice" may be interposed by a state to prevent subsequent review by this Court of a federal constitutional claim. <u>Id.</u> (citing <u>Lee</u>, 534 U.S. at 375). The adequate and independent state law ground doctrine encompasses both procedural and substantive rules. <u>Coleman v. Thompson</u>, 501 U.S. 722, 743-44 (1991).

Here, the state law ground on which the Appellate Division rejected three of Petitioner's claims was the failure to comply with New York State's preservation rule, which requires defense

counsel to lodge a contemporaneous and specific objection to any alleged legal error in order to preserve the issue for appellate review. See N.Y. CRIM. P. LAW § 470.05(2); see also Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003). Codified at C.P.L. § 470.05(2), the contemporaneous objection rule "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." Garcia v. Lewis, 188 F.3d 71, 78 (2d Cir. 1999) (quoting People v. Luperon, 85 N.Y.2d 71, 78 (1995)). Because a general objection would not alert the trial court to the defendant's position, New York's appellate courts "uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error." Garvey, 485 F.3d at 714-15 (citing New York cases).

The adequacy of a state procedural bar is itself a federal question, Lee, 534 U.S. at 375, and thus the habeas court "must ascertain whether the state rule at issue . . . is firmly established and regularly followed, and further whether application of that rule in th[e] [particular] case would be exorbitant." Garvey, 485 F.3d at 714. This requires the habeas court to examine the procedural bar in question and the state case law construing it. Id. (citing Cotto, 331 F.3d at 243).

**B.    Application to Petitioner's Claims**

**1.    The Erroneous Supplemental Jury Instruction Claim Is Procedurally Defaulted.**

Ali contends, as he did on direct appeal, that the trial court's supplemental instruction concerning whether a vestibule and outdoor porch constituted parts of the dwelling was erroneous and confused the jury. The prosecution argued that the claim was unpreserved due to the lack of a timely objection, and the Appellate Division agreed, noting that defense counsel "in fact requested a portion of the supplemental instruction, thereby waiving any objection thereto, and he failed to object to the remainder of the instruction, thereby failing to preserve his contention . . . with respect to the remainder of the instruction[.]" People v. Ali, 89 A.D.3d at 1413 (internal citations omitted).

The Appellate Division's reliance on the preservation rule to dismiss the jury instruction claim certainly is independent of the judgment. Indeed, the Appellate Division declined to exercise its interests-of-justice jurisdiction to review the merits of the unpreserved claim. Moreover, the application of the contemporaneous objection rule is adequate—i.e., firmly established and regularly followed in circumstances similar to the case at bar. See, e.g., People v. Swail, 19 A.D.3d 1013, 1013 (4th Dep't 2005) ("Defendant did not object to the supplemental charge given by County Court in response to a question from the jury, and thus he has failed to

preserve his contention with respect to that charge . . .[.]")
(citations omitted); People v. Rodriguez, 187 A.D.2d 465, 465
(2d Dept. 1992) ("The defendant's contention that the trial court's
charge was erroneous is unpreserved for appellate review, as the
defendant . . . failed to object to the trial court's additional
instruction after receiving a question from the jury during
deliberations[.]") (citations omitted). As these cases indicate,
appellate courts in New York routinely and consistently apply this
rule in cases where the defendant challenges a supplemental jury
instruction, and Ali has not established that the Appellate
Division's application of the rule in his case departed from its
regular application in similar cases. The transcript makes clear
that the trial court offered Ali's defense counsel the opportunity
to object to its delivery of the supplemental jury instruction, but
he declined to do so. Indeed, defense counsel acquiesced in one
portion of the jury instruction and failed to object to the
remainder of the charge.

Because the Appellate Division's denial of the supplemental
jury instruction claim rested on a state ground that was both
independent of the federal question and adequate to support the
judgment, the claim is subject to a procedural default.

### 2. The Insufficiency Of The Evidence Claim Is Procedurally Defaulted.

At trial, defense counsel made a general motion for a trial
order of dismissal at the close of the prosecution's case, and he

made a renewed, general motion for a trial order of dismissal after the defense rested. Both motions were denied. On appeal, Ali's appellate counsel argued specifically that the prosecution failed disprove, beyond a reasonable doubt, his defense of justification. The Appellate Division held that Ali had "failed to preserve for [its] review his contention that the conviction is not based on legally sufficient evidence[.]" People v. Ali, 89 A.D.3d at 1413 (citing People v. Hawkins, 11 N.Y.3d 484, 492 (2008) ("To preserve for this Court's review a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged. As we have repeatedly made clear—and underscore again—general motions simply do not create questions of law for this Court's review[.]") (internal and other citations omitted); People v. Gray, 86 N.Y.2d 10, 19 (1995)). The Appellate Division held that, in any event, the contention lacked merit. Ali, 89 A.D.3d at 1412-13 (citations omitted).

The fact that the Appellate Division ruled in the alternative on the merits of the claim does not obviate a finding that the failure to comply with the preservation rule was an independent basis for the judgment. See Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) ("There is no question that the Appellate Division's explicit invocation of the procedural bar constitutes an 'independent' state ground, even though the court spoke to the

merits of [the] claim in an alternative holding.") (citing <u>Harris</u> <u>v. Reed</u>, 489 U.S. 255, 263, 264 n. 10 (1989)). The Court thus turns to the issue of whether the state ground was "adequate".

In the context of legal insufficiency claims, the New York Court of Appeals has interpreted the contemporaneous objection rule to require a motion for a trial order of dismissal to "specif[y] the alleged infirmity" so as to "help[ ] to assure that legally insufficient charges will not be submitted for the jury's consideration. . . ." <u>Hawkins</u>, 11 N.Y.3d at 492. Here, defense counsel simply argued that the prosecution has "not presented a prima facie case." T.562. This objection, which did not identify any particular element of first degree assault on which the prosecution's proof was allegedly insufficient, was far too general to constitute substantial compliance with New York's preservation rule. <u>See</u> <u>Hawkins</u>, 11 N.Y.3d at 493 (defense counsel's objection that "the People failed to prove that Mr. Hawkins acted with Depraved Indifference Murder" "did little more than argue that the People failed to prove the essential elements of depraved indifference murder" and "could have been directed at either the reckless mens rea element, or the objective circumstances evincing a wanton, depraved indifference to human life, and did not alert the trial court to the argument . . . being advanced [on appeal]: that defendant acted intentionally, not recklessly in killing the victim"). Under the circumstances, the Court finds that Appellate

Division's application of the contemporaneous objection rule is firmly established and regularly followed in cases that, in all essential respects, are the same as Ali's. Hence, the state ground is "adequate" for purposes of the independent and adequate state ground doctrine.

### 3.   The <u>Batson</u> Claim Is Procedurally Defaulted.

Ali presses the same <u>Batson</u> claim that he raised on direct appeal–that the prosecutor's reason for striking an African-American juror was merely a pretext for racial discrimination. The Appellate Division held that Ali "failed to preserve for [its] review his contention that the prosecutor's reason for striking a particular juror was pretextual, having failed to raise before the trial court the specific claim he now raises on appeal[.]" <u>Ali</u>, 89 A.D.3d at 1413 (citations omitted).   Although the Appellate Division analyzed the merits of the <u>Batson</u> claim in connection with its holding regarding Ali's claim that trial counsel was ineffective in failing to preserve the <u>Batson</u> claim, the contemporaneous objection rule here nevertheless was "independent" of the judgment dismissing the underlying <u>Batson</u> claim. <u>See Garcia v. Lewis</u>, 188 F.3d at 77.

Furthermore, the application of the contemporaneous objection rule is "adequate", i.e., firmly established and regularly followed in cases similar to Ali's. It is well-established under New York law that a party "is not allowed to either interpose a vague <u>Batson</u>

objection or forego making a particularized objection to a juror only to later pursue a reformulated, belatedly-specific claim on appeal[.]" <u>People v. Jones</u>, 284 A.D.2d 46, 48 (1st Dept. 2001) (collecting cases). Based upon the Court's review, the case law interpreting New York's preservation rule with regard to <u>Batson</u> challenges "displays consistent application in a context similar to" Ali's case, and therefore the Court concludes that the rule "is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine." <u>Richardson v. Greene</u>, 497 F.3d 212, 220 (2d Cir. 2007) (holding that firmly established and regularly followed New procedural preservation rule barred federal habeas review of petitioner's federal <u>Batson</u> claim that prosecutor's proffered reason for striking African American juror was not race neutral; petitioner failed to preserve issue for appeal by failing to raise specific issue before trial court and court did not expressly decide the issue) (citing <u>Garvey</u>, 485 F.3d at 715).

### 4. There Is No Basis To Excuse The Procedural Defaults.

"[A] procedural default will be excused upon a showing of cause and prejudice." <u>McCleskey v. Zant</u>, 499 U.S. 467, 493 (1991) (citation omitted); <u>see also</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986). In addition, where there has been a "fundamental miscarriage of justice," i.e., "where a constitutional violation

has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray, 477 U.S. at 496. Petitioner has not attempted to establish either cause for his procedural defaults or that he would be prejudiced should his claims not be reviewed by this Court. Likewise, he has not attempted to show that a fundamental miscarriage of justice would occur if this Court does not review his defaulted claims. Petitioner therefore has not borne his burden of overcoming the procedural bars. See McCleskey v. Zant, 499 U.S. 467, 494 (1991) (citations omitted). The Batson, legal insufficiency, and jury instruction claims are dismissed on the basis that they are subject to unexcused procedural defaults.

## IV.  Merits of the Petition

### A.    General Legal Principles

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Ali's petition, filed in 2013. Where the relevant federal claim has been "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), the habeas court has no authority to issue the writ unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." <u>Parker v. Matthews</u>, ___ U.S. ___, 132 S. Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).

**B.  The Ineffective Assistance of Counsel Claim Does Not Warrant Habeas Relief.**

**1.  Overview**

Petitioner identifies the following errors by trial counsel: (1) ineffective cross-examination of Officer Constantino; (2) failure to make a specific motion for a trial order of dismissal; (3) failure to object to some of the prosecutor's summation comments; and (4) failure to make an adequate <u>Batson</u> objection. The Appellate Division specifically addressed the fourth error alleged by Ali regarding the <u>Batson</u> claim, holding that he "was not denied effective assistance of counsel based on his attorney's failure to preserve th[e] <u>Batson</u> challenge for . . . review inasmuch as the prosecutor offered a legitimate race neutral reason for striking the prospective juror in question, and thus defendant's challenge would not have been successful[.]" <u>People v. Ali</u>, 89 A.D.3d at 1414 (citations omitted). With regard to Ali's "further allegations of ineffective assistance," the Appellate Division held that "[v]iewing the evidence, the law and the circumstances of this case, in totality and as of the time of the representation," Ali

"received meaningful representation[.]" Id. (citing People v. Baldi, 54 N.Y.2d 137, 147 (1980)).

Because Baldi is not "contrary to" Strickland v. Washington, 466 U.S. 668 (1984), the "clearly established federal law" for evaluating ineffective assistance claims, Petitioner may obtain relief only if he can show that the Appellate Division "unreasonably applied" Strickland. Rosario v. Ercole, 601 F.3d 118, 126 (2d Cir. 2010). Establishing ineffective representation under Strickland means that the petitioner "must prove both incompetence and prejudice." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688). As discussed further below, Petitioner cannot satisfy both prongs of Strickland on de novo review of the merits, see Rosario, 601 F.3d at 126  (citing Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), and necessarily cannot satisfy AEDPA's more demanding standard.

### 2.   Counsel's Alleged Errors

#### a.   Ineffective Cross-Examination

Petitioner contends that trial counsel's cross-examination of Officer Constantino "doomed" his justification defense because he elicited information that the officer did not see any evidence of a burglary at Petitioner's home. According to appellate counsel, this testimony was "highly damaging" and deprived Petitioner of his justification defense pursuant to P.L. § 35.20(3).

As an initial matter, it is well-settled that "the conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam). Petitioner seizes on one isolated portion of the cross-examination but ignores the fact that counsel elicited admissions that Officer Constantino did not witness the confrontation between Petitioner and Brown; did not know how many people were with Brown; failed to tell Detective Torre that Petitioner had mentioned a burglary or attempted burglary; and failed to collect himself, or have Detective Torre collect, swabs from the exterior door, entry walkway, or interior door handle to submit for DNA testing. See T.433-34. Then, during summation, trial counsel pointed out the flaws in Officer Constantino's investigation, characterized his demeanor as "defiant", "defensive", and argued that his testimony was unworthy of belief. See T.568-69. Trial counsel thus suggested to the jury that there was evidence to further substantiate Petitioner's self-defense claim, but due to Officer Constantino's ineptitude, it was not available for the jury to hear. Reviewing the whole of counsel's cross-examination of Officer Constantino, the Court finds that it was conducted in a competent manner.

**b.   Failure to Make a Specific Motion for a Trial Order of Dismissal**

Ali contends that trial counsel was ineffective because he made only a general motion for a trial order of dismissal and therefore failed to properly preserve the legal insufficiency issue for appellate review. However, because the Appellate Division examined the merits of Ali's legal insufficiency claim notwithstanding the lack of preservation, Ali cannot demonstrate that he was prejudiced by counsel's omission. See, e.g., Waters v. McGuiness, No. 99-CV-0615, 2003 WL 21508318, at *3 (E.D.N.Y. June 16, 2003) (where Appellate Division reached the merits of unpreserved legal insufficiency claim on direct appeal and held that the verdict was legally sufficient and not against the weight of the evidence, petitioner was not prejudiced even if counsel was ineffective for failing to preserve the claim), aff'd, 99 F. App'x 318 (2d Cir. 2004); accord Swail v. Hunt, 742 F. Supp.2d 352, 360 (W.D.N.Y. 2010).

**c.   Failure to Object to Prosecutorial Misconduct**

Petitioner contends that trial counsel was ineffective because he failed to object to certain of the prosecutor's comments during summation, and consequently failed to preserve the prosecutorial misconduct issue for appellate review. As with the legal insufficiency claim, the Appellate Division examined the merits of Petitioner's prosecutorial misconduct claim on direct appeal, despite the lack of timely objections by defense counsel to most of

-20-

the comments. Thus, Petitioner cannot demonstrate that he was prejudiced by counsel's omissions. See Walker v. Bennett, 262 F. Supp.2d 25, 40 (W.D.N.Y. 2003) (finding that petitioner was unable to establish prejudice based on counsel's failure to object to prosecutor's remarks; even if counsel had objected, petitioner's challenge "would have proven fruitless on appeal" since appellate court reviewed prosecutorial misconduct claim and found that summation constituted fair response to defense remarks) (citing Flores v. Keane, 211 F. Supp.2d 426, 435 (S.D.N.Y. 2001) (counsel failed to preserve objection to prosecutor's comments; petitioner unable to establish prejudice to excuse procedural default where state court held that if it were to consider claim, it would find it unmeritorious)).

### d.   Failure to Preserve Batson Claim

Lastly, Petitioner faults trial counsel for failing to properly preserve his Batson claim, made in regards to Juror Hakim, a male African-American. The prosecutor gave, as her reason for striking Juror Hakim, the fact that he had been a victim of a mugging when he was fifteen-years-old. The prosecutor noted that Petitioner's stepson was around the same age when his cell phone was taken after the fight at the basketball court with Manning, and that this incident is what led to Petitioner becoming enraged and stabbing Brown. The prosecutor opined that Juror Hakim might be sympathetic to Petitioner because he was around the same age as

Petitioner's stepson when he was mugged. The trial court accepted
this as a race-neutral reason and asked if trial counsel had any
further argument. Trial counsel replied,  "I don't see the nexus,
and although I don't have it in my notes, I am assuming Your Honor
asked him if that [the past mugging] would have any effect on him."
T.160. The trial judge noted that he believed he did ask the juror,
and that his answer was no. Id. The trial judge continued,

> [A]s I parse it through in my mind, I do find that [the
> prosecutor] has offered a sufficient explanation to
> explain why she said she might be uncomfortable with this
> particular juror independent of his race; that being he
> . . . was a victim of a mugging when he was young. And I
> do believe, from what I have heard, that the genesis of
> this altercation had something to do with your client's
> son or stepson being mugged by the victim or relatives of
> the victim. So I find that there's a sufficient basis to
> uphold this challenge on a peremptory basis.

T.160. Trial counsel did not take exception or offer any further
argument. T.161.

On direct appeal, Petitioner argued that the prosecutor's
reason was pretextual because there were non-minority prospective
jurors who had been crime victims but had not been struck by the
prosecutor on that basis. See Petitioner's Appellate Brief ("Pet'r
App. Br.") at 21-22, Resp't Ex. A. As discussed above, the
Appellate Division held that this claim was unpreserved because
Petitioner had failed to raise that specific claim before the trial
court. People v. Ali, 89 A.D.3d at 1414 (citations omitted).

The Appellate Division then held that Petitioner was "was not
denied effective assistance of counsel based on his attorney's

failure to preserve that <u>Batson</u> challenge . . . inasmuch as the prosecutor offered a legitimate race neutral reason for striking the prospective juror in question, and thus defendant's challenge would not have been successful[.]" <u>Id.</u> (citations omitted). The Appellate Division thus did not address whether trial counsel was ineffective in failing to argue that the prosecutor's proffered reason, although facially race-neutral, nevertheless was a pretext for discrimination because the prosecutor did not strike similarly-situated, non-minority jurors on the same basis.

As courts in this Circuit have recognized, "a reason found to be race-neutral in one case can be a pretext for discrimination in another." <u>Jordan v. LeFevre</u>, 22 F. Supp.2d 259, 274 (S.D.N.Y. 1998) (citing cases), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 206 F.3d 2000); <u>see also</u> <u>Owens v. Portuondo</u>, No. 98 CIV. 6559(AJP), 1999 WL 378343, at *10 n.6 (S.D.N.Y. June 9, 1999). While the "uneven application of a facially race neutral explanation does not, by itself, necessarily establish the invalidity of the explanation." <u>Owens</u>, 1999 WL 378343, at *11 (citing, <u>inter</u> <u>alia</u>, <u>Matthews v. Evatt</u>, 105 F.3d 907, 918 (4th Cir.), <u>cert.</u> <u>denied</u>, 118 S.Ct. 102 (1997)), "[t]he force of a prosecutor's explanation for challenging a minority member of a venire is obviously weakened substantially by evidence that non-minority members to whom the same explanation applies were not challenged." <u>United States v. Alvarado</u>, 951 F.2d 22, 25 (2d Cir. 1991).

Petitioner, on appeal, pointed out a number of jurors who personally had been victims of crimes or whose family members had been crime victims, but who were seated on the jury. See Pet'r App. Br. at 22. In particular, Petitioner noted that Diane Bauer was a victim of embezzlement; Martin McGuire had his car broken into; Lyndsey D'Arcangeo's great-aunt was assaulted and robbed; Frank Capodagli's wife was robbed; Diane Bassanello's house was robbed when she was a teenager; and Jennifer Davis' home was burglarized and her brother killed in a drive-by shooting. Id. (citations to record omitted). However, as the prosecution argued on appeal, apart from being crime victims, these jurors were different from Juror Hakim with regard to the underlying circumstances of their crimes. In other words, the prosecutor had a reasonable basis in the record for treating Juror Hakim as not similarly situated to the jurors identified by appellate counsel on appeal. The Court notes that at trial, the prosecutor specifically referenced the factors that made Juror Hakim's situation similar to Petitioner's. The Court finds that even if trial counsel had argued the basis for finding pretext that appellate counsel urged on appeal, the trial judge still would have denied the Batson motion regarding Juror Hakim. Thus, Petitioner cannot show that he was prejudiced by trial counsel's omission.

**C.   The Prosecutorial Misconduct Claim Does Not Warrant Habeas Relief.**

Petitioner argues, as he did on direct appeal, that he was denied a fair trial based on prosecutorial misconduct during the prosecutor's summation. The Appellate Division held that "[t]he majority of the comments in question were within the broad bounds of rhetorical comment permissible during summations" and "were either a fair response to defense counsel's summation or fair comment on the evidence. . . ." People v. Ali, 89 A.D.3d at 1414 (quotation omitted; alteration and ellipses in original). The Appellate Division further found that "[e]ven assuming, arguendo, that some of the prosecutor's comments were beyond those bounds, . . . they were not so egregious as to deprive defendant of a fair trial[.]" Id. (quotation omitted). The Appellate Division's merits-adjudication of the prosecutorial misconduct claim receives deferential review under the AEDPA standard. Parker v. Matthews, 132 S. Ct. at 2153 (citation omitted). The "clearly established Federal law" relevant here is the Supreme Court's decision in Darden v. Wainwright, 477 U.S. 168 (1986), in which it explained that "a prosecutor's improper comments will be held to violate the Constitution only if they '"so infected the trial with unfairness as to make the resulting conviction a denial of due process."'" Parker, 132 S. Ct. at 2153 (quoting Darden, 477 U.S. at 181) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Habeas review of alleged improper prosecutorial comments thus is

"the narrow one of due process, and not the broad exercise of supervisory power." <u>Donnelly</u>, 416 U.S. at 642.

Petitioner first contends that the prosecutor improperly instructed the jury on the law of justification. <u>See</u> T.591-92. When counsel objected, the judge noted that he had explained to the jury that he would allow counsel "some latitude to incorporate the law as they understand it in their closing argument" but reminded the jury that his instructions on the law controlled, and that if the jury found "any discrepancy between counsel's assessment of the law" and his instructions, the jury "will disregard counsel's recitation. . . ." T.592. When trial counsel later objected again on the same basis, the trial judge re-admonished the jury to rely on the law as instructed by the trial court if either attorney misstated the law. In light of the trial court's sustaining of the objection and curative measures, any misstatement by the prosecutor did not undermine Petitioner's right to a fair trial. <u>See</u> <u>Harmon v. Busby</u>, EDCV 11-2025-DDP RNB, 2012 WL 5870797, at *27 (C.D. Cal. Aug. 22, 2012).

Petitioner also asserts that the prosecutor improperly argued that Mrs. Ali's criminal history and prior bad acts undermined her credibility. T.605. Petitioner has cited no authority for this proposition and, in any event, the trial court sustained defense counsel's objection to the one comment about Mrs. Ali that was factually inaccurate. Thus, the Court finds that the

mischaracterization, as to which counsel's objection was sustained, did not prejudice Petitioner's right to a fair trial.

Next, Petitioner urges, the prosecutor erred in arguing that Petitioner and his wife had fabricated a story to support the self-defense theory after the fact. Contrary to Petitioner's contention, the prosecutor was not commenting on matters not in evidence but was suggesting that the jury draw inferences based on facts in evidence, namely, that there were certain details which did not appear in Petitioner's first statements to the police and which were not mentioned until after Petitioner and his wife had talked on the phone about 75 times while he was in jail. See United States v. Smith, 982 F.2d 681, 683 (1ˢᵗ Cir. 1993) (holding that the prosecutor's statement that a witness and defendant had "concocted" their story was not improper because it suggested inferences that the jury could draw from the conflicting evidence).

Finally, Petitioner argues, the prosecutor impermissibly shifted the burden of proof when she stated,

> The only other thing I remember is that he [defense counsel] was going to fight back with his own cold hard evidence. Well, where did that come from? And where did the cold hard evidence go? Because I didn't see any cold hard evidence come from the defense.

T.601. Trial counsel did say he was going to "fight back" during his opening statement, but the prosecutor subtly mischaracterized his reference to "hard facts"; trial counsel described what he believed the "hard facts" would show, T.261, and did not say that

he was going to "fight back with cold, hard facts." "It is fundamental that the fifth amendment prohibits the prosecution from commenting upon a defendant's decision not to testify." Griffin v. California, 380 U.S. 609, 615 (1965). "A prosecutor may, consistent with due process, ask a jury to convict based on the defendant's failure to present evidence supporting the defense theory." Menendez v. Terhune, 422 F.3d 1012, 1034 (9th Cir. 2005); see also United States v. Yuzary, 55 F.3d 47, 53 (2d Cir. 1995) ("'The prosecutor [wa]s entitled to comment on [Yuzary's] failure . . . to support his own factual theories with witnesses.'") (quotations and citations omitted; ellipsis and alterations in original)). Read in context, the prosecutor's remark was more of a comment on the failure of defense counsel, as opposed to a failure by Petitioner himself, to counter or explain the evidence presented. See United States v. Mares, 940 F.2d 455, 461 (9th Cir. 1991) (citation omitted). While the better practice would have been to avoid any implication that the defense has a duty to present evidence, the prosecutor's remark did not render the trial fundamentally unfair. The trial judge instructed the jury that counsels' arguments were not evidence; that Petitioner was not required to prove his innocence; and that no inference could be drawn from his failure to testify.

## VI.   Conclusion

The application for a writ of habeas corpus is denied, and the petition is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 23, 2014
           Rochester, New York

-29-